**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Beverly Johns, ) | |
| ) | Civil Action No. 6:12-cv-01683-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Amtrust Underwriters, Inc., Merreles ) | |
| Schumann, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Beverly Johns ("Plaintiff") filed the instant action alleging defamation of character and tortious interference with an at-will employment contract by Defendants Amtrust Underwriters, Inc. and Merreles Schumann (collectively referred to as "Defendants"). (ECF Nos. 1-1, 5). This matter is before the court on Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (ECF No. 47). For the reasons set forth below, the court **DENIES** Defendants' Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a lawyer and former at-will employee of Specialty Claims Management, LLC ("Specialty"), a third party administrator organization that processes various claims for major insurance carriers. (ECF No. 5 at 1–2; ECF No. 47-1 at 3; *see also* http://www.specialtyclaims.com/about-scm.html (last visited Jan. 27, 2014)). Plaintiff was employed from March 1, 2010 through August 8, 2011, as a Specialty claims supervisor. (ECF No. 47-1 at 3). Plaintiff performed exclusive work on the files of Defendant Amtrust Underwriters, Inc. ("Defendant Amtrust") until the time of her termination. *Id.* Defendant Amtrust is a major insurance provider. *See* http://www.amtrustgroup.com/About-

1

Us/Default.aspx (last visited Jan. 27, 2014).

Defendant Merreles Schumann ("Defendant Schumann") was employed as a program director for Defendant Amtrust and in that capacity she oversaw Plaintiff's work. (ECF No. 5 at 2; ECF No. 47-1 at 3). Defendant Schumann worked from Specialty's office in Secaucus, New Jersey four days a week. (Schumann Dep., ECF No. 61-1 at 8). Plaintiff worked remotely from Greenville, South Carolina on files related to Defendant Amtrust's Program Brokerage Corporation ("PBC") Account. (ECF No. 47-1 at 3). While Plaintiff was employed at Specialty, she was supervised by Thomas Kiernan, a former claims manager in Specialty's Secaucus office. (*Id.* at 5, n.5; ECF No. 49-1 at 4). Plaintiff was also supervised by William Howell, the President of Specialty. (ECF No. 47-1 at 5, n.5; ECF No. 49-1 at 4).

Both Specialty executives acknowledged an interpersonal conflict between Defendant Schumann and Plaintiff. Kiernan testified, "I was aware that [Defendant Schumann and Plaintiff] didn't hit it off. They were not buddy-buddy."[1] (Kiernan Dep., ECF No. 49-3 at 10). Kiernan also stated, "There was obviously a lack of communication between the two of them" and commented that the conflict was rooted in a combination of personal and business issues. *Id.* at 13. Howell testified, "There had been some confrontational issues that I had some awareness of. I did not think they were real serious. I thought they were improving[.]" (Howell Dep., ECF No. 49-2 at 2–3).

Plaintiff testified that "for the 14 months, 16 months I worked with [Defendant Schumann], she was…[h]ypercritical on…little things." (Johns Dep., ECF No. 55-1 at 11). Plaintiff stated that Defendant Schumann "went to my boss'[s] boss to complain that I had used the word laundry list in a claim log note." *Id.* Plaintiff also commented that Defendant

---

[1] Kiernan also commented, "[T]hey obviously didn't get along, and they had their own problems between the two of them." (ECF No. 47-9 at 4).

2

Schumann complained again to her "boss's boss" about the color of a font Plaintiff used in her email. *Id.*

From June 27, 2011 until June 29, 2011, Defendant Schumann along with two other employees of Defendant Amtrust conducted an audit of sixty files. (*See* Johns Dep. Exhibit 19, ECF No. 58-1 at 1–3). Defendant Schumann wrote the audit summary which was dated July 14, 2011. (*Id.*; Schumann Dep., ECF No. 61-1 at 51–52). The audit summary stated, "The files handled by one unit showed almost no presence in file of involvement by the supervisor." (Johns Dep. Exhibit 19, ECF No. 58-1 at 2). Subsequently, Defendant Schumann spoke with Howell and Kiernan and asked that Plaintiff no longer work on Defendant Amtrust's files because Defendants "weren't satisfied with the performance in the files."[2] (Schumann Dep., ECF No. 61-1 at 99–100). Plaintiff testified that Defendant Schumann's statement that there was a lack of supervision evident in the files that Plaintiff supervised was false. (Johns Dep., ECF No. 55-1 at 6).

Defendant Amtrust was an important client to Specialty. Howell and Plaintiff estimated that Defendant Amtrust constituted 40 percent of Specialty's business. (Howell Dep., ECF No. 47-7 at 20; Johns Dep., ECF No. 55-1 at 11). Kiernan estimated Defendant Amtrust represented 65 percent of Specialty's business. (Kiernan Dep., ECF No. 47-9 at 10). Kiernan indicated that Specialty focused on pleasing their clients, including Defendant Amtrust. Kiernan testified that when Plaintiff spoke with him about Plaintiff's difficulties in communicating with Defendant Schumann, he told Plaintiff that Defendant Schumann "is the queen and you have to work with

---

[2] In reference to this meeting, Kiernan recalled that Defendant Schumann "and some other people had done an audit of claims, off-site. They didn't give us any sheets where we could rebut any of the results. And basically, when she came [into] the office, [Howell] and I were sitting in his office, and she said as a result of this audit, we don't want [Plaintiff] on our program anymore." (ECF No. 49-3 at 2).

3

her.  It has to work."  (Kiernan Dep., ECF No. 49-3 at 11).  Kiernan stated, "If the client says 'Jump,' I am supposed to say, 'How high?'  You want to make the client happy.  If they don't want somebody on the account, you have to remove them."  *Id.* at 5–6.

Kiernan explained that the findings of Defendant Amtrust's audit were reported differently from how other clients reported their findings.  *Id.* at 7–8.  Kiernan testified that typically other clients "would not only give you the audit sheets and…the file…you would [also] look at the file and then rebut their findings."  *Id.* at 8.  However, Kiernan acknowledged that Defendant Amtrust's move to a computer-based system may have made such review of the audit conclusions more difficult.  *Id.*  Kiernan stated that if he personally wanted to review the audit report at a detailed level it would have been difficult, but he also admitted that he never attempted.  (*Id.* at 8; ECF No. 47-9 at 8).  Howell stated that he reviewed a number of the files and confirmed that Plaintiff "did not appear in the files."  (Howell Dep., ECF No. 49-2 at 4–5).  Howell concluded from his review that Plaintiff "probably was in and didn't document, which is not too uncommon, but it's a substantial error…if we don't see the supervisor in the file[.]"  *Id.* at 5.

Specialty attempted to find another account on which Plaintiff could be placed.  (Howell Dep., ECF No. 47-7 at 8).  When Specialty was unable to place Plaintiff elsewhere, she was terminated on August 8, 2011.  (*Id.*; ECF No. 5 at 3).  Both Howell and Kiernan wrote letters of recommendation for Plaintiff as she attempted to find alternative employment.  (*See* Johns Dep. Exhibits 15, 16, ECF No. 57-1 at 123, 124).  In a letter dated September 27, 2011, Howell wrote that Plaintiff "was considered one of our strongest supervisors, yet our clients were not comfortable with remote supervision."  (Johns Dep. Exhibit 15, ECF No. 57-1 at 123).  In a letter dated September 30, 2011, Kiernan also indicated that Plaintiff was instructed to be taken off a

4

program because their client was "not a big fan of remote employees." (Johns Dep. Exhibit 16, ECF No. 57-1 at 124). Kiernan expressed that Plaintiff was an excellent employee stating, "Our loss will be your gain." *Id.*

Plaintiff initially filed the instant action in the South Carolina Court of Common Pleas in Greenville County on May 14, 2012. (ECF No. 1 at 1; ECF No. 1-1). On June 19, 2012, Defendants removed the matter to federal court pursuant to diversity jurisdiction (ECF No. 1), and Plaintiff filed an amended complaint (ECF No. 5). Following the completion of discovery, Defendants moved for summary judgment under FED. R. CIV. P. 56. Plaintiff filed a response in opposition to Defendants' motion (ECF No. 49), to which Defendants filed a reply (ECF No. 50). The court held a hearing on this matter on January 9, 2014. (ECF No. 51).

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the

5

district court that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *See id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *See Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## ANALYSIS

A.     <u>Defamation in the Form of Slander</u>[3]

Plaintiff's initial allegations in the amended complaint were that Defendant Schumann made statements about Plaintiff's job performance that were false, unfounded, and that intended to impeach Plaintiff's honesty, integrity, virtue, and reputation.  (ECF No. 5 at 4).  Plaintiff further claimed that as a result of Defendant Schumann's "knowingly false statement," she was terminated by Specialty which resulted in damages.  *Id.* at 4–5.

---

[3] In their reply to Plaintiff's response in opposition to summary judgment, Defendants contend that Plaintiff has abandoned her defamation claim by not addressing Defendants' arguments on this issue in Plaintiff's response.  (ECF No. 50 at 1–2).  In support of this contention, Defendants cite to *Eady v. Veolia Transp. Services, Inc.*, 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) which states, "The failure of a party to address an issue raised in summary judgment may be considered waiver or abandonment of the relevant cause of action."  *Id.*  While the court has considered Defendants' argument that Plaintiff has abandoned this claim, the court within its discretion permitted Plaintiff to address the defamation claim at oral argument.  *See Jones v. Danek Medical, Inc.*, No. 4:96-3323-12, 1999 WL 1133272, at *3 (D.S.C. Oct. 12, 1999).  Moreover, "[a]lthough the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'"  *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  Therefore, the court will proceed to the merits of this claim.

To establish a claim of defamation under South Carolina law, the plaintiff must prove that a statement occurred, which (1) had a defamatory meaning; (2) was published with actual or implied malice; (3) was false; (4) was published by the defendant; (5) concerned the plaintiff; and (6) resulted in presumed or special damages. *Parker v. Evening Post Pub. Co.*, 452 S.E.2d 640 (S.C. Ct. App. 1994). The parties contest the first three elements, namely: whether Defendant Schumann made a defamatory statement, with malice, and whether that statement was false. Defendants also assert a qualified privilege which they contend shields them from liability, even if Defendant Schumann's statement was defamatory.

i. Defamatory Meaning

The South Carolina Supreme Court has instructed that summary judgment "should be granted only if the court determines the publication is incapable of any reasonable construction which will render the words defamatory." *White v. Wilkerson*, 493 S.E.2d 345, 347 (S.C. 1997). The South Carolina Supreme Court has further explained that words are defamatory where they "convey to the minds of those to whom they are addressed the impression that the plaintiff has done wrong." *Id.* (internal quotations and citation omitted). "It is only necessary that the words should be capable of the offensive meaning attributed to them." *Id.* Defamation has also been defined, in relevant part, as communication which tends to "impeach the honesty or integrity or reputation…and thereby to…cause [a plaintiff] to be shunned or avoided, or to injure him in his office, business, or occupation." *Smith v. Bradstreet Co.*, 41 S.E. 763, 764 (S.C. 1902).

At the summary judgment hearing, the court asked the parties to identify the specific statement or statements that were allegedly defamatory. Both parties agreed that the claim of defamation is centered upon Defendant Schumann's statement to Plaintiff's managers that a lack of supervision was evident in the files which Plaintiff supervised. (*See* Schumann Dep., ECF

7

No. 61-1 at 99–100; Johns Dep., ECF No. 55-1 at 6; Howell Dep., ECF No. 49-2 at 3). Viewing this statement in the light most favorable to Plaintiff, the court finds that a reasonable jury could conclude that this statement indicated wrongdoing by Plaintiff and that it led to injury in Plaintiff's occupation, specifically her termination. Therefore, Plaintiff's defamation claim meets the first prong.

        ii.    Malice

Proof of actual or implied malice is not required where the court determines a defendant's slander was actionable *per se*. *Parrish v. Allison*, 656 S.E.2d 382, 389 (S.C. Ct. App. 2007). Generally, the question of whether slander is actionable *per se* is a question of law for the court. *Id.*, *but see Goodwin v. Kennedy*, 552 S.E.2d 319, 323–343 (S.C. Ct. App. 2001) (finding the question of whether statements were actionable *per se* a matter for the jury). Allegations of "unfitness in one's business or profession" are *per se* actionable. *Parrish*, 656 S.E.2d at 389. Because the court finds that Defendant Schumann's statement related to Plaintiff's performance in her job, it concludes that the statement, presuming it meets the other elements for defamation, may constitute slander *per se*. For that reason, Plaintiff survives summary judgment for prong two of this claim.

        iii.    Falsity

At common law a defamatory statement is presumed false. *Parker v. Evening Post Pub. Co.*, 452 S.E.2d 640, 646 (S.C. Ct. App. 1994). Therefore, Defendants shoulder the burden of establishing the affirmative defense of truth. *Beckham v. Sun News*, 344 S.E.2d 603, 604 (S.C. 1986) ("Indeed, we have found reversible error where the jury was instructed the plaintiff had the burden of proving falsity."). The issue of falsity is the central issue for Plaintiff's defamation claim.

8

In their argument at the summary judgment hearing regarding the truthfulness of Defendant Schumann's statement that there was a lack of supervision evident in the files, Defendants referred to the June 2011 audit upon which Defendant Schumann's statement was allegedly based. Defendants also emphasize Howell's statement that he personally reviewed some of the files in question and found they lacked documentation of supervision. Nonetheless, the court finds that a genuine issue exists. Plaintiff indicates there was not a lack of supervision evident in the files. There is evidence that Plaintiff and Defendant Schumann maintained an interpersonal conflict from which an ill-natured motive could be inferred. Both Howell and Kiernan held Plaintiff in high regard as an employee, and they stated in their recommendation letters that the reason for Plaintiff's termination was Defendants' discomfort with remote supervision, not any deficiency in Plaintiff's performance.

Moreover, the court finds the key evidence for Defendants' defense of truth — the June 2011 audit — inconclusive. The audit summary and spreadsheet do not, on their face, specify that the files Plaintiff supervised lacked evidence of supervision. (*See* Johns Dep. Exhibits 19, 20, ECF No. 58-1 at 1–17). In fact, neither document mentioned Plaintiff by name. *Id.* Additionally, a reasonable jury could conclude from Kiernan's testimony about the typical manner in which audits are handled that the June 2011 audit was less than authentic. Therefore, the record precludes the granting of summary judgment for this prong. This is especially the case because, as mentioned above, the falsity of Defendant Schumann's statement is presumed. *See Parker v. Evening Post Pub. Co.*, 452 S.E.2d 640, 646 (S.C. Ct. App. 1994).

    iv. Qualified Privilege

As an affirmative defense to slander, a defendant may assert that the statement was made under a qualified privilege. If the qualified privilege exists, the claim will fail unless the plaintiff

9

can prove actual malice. *Constant v. Spartanburg Steel Products, Inc.*, 447 S.E.2d 194, 196 (S.C. 1994). A qualified privilege is defined as "[a] communication made in good faith on any subject matter in which the person communicating has an interest or duty…if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." *Id.* In order to maintain the privilege, "[t]he publisher must not wander beyond the scope of the occasion." *Id.*

Defendants argue that they are shielded from liability for slander due to a qualified privilege. (ECF No. 47-1 at 21–24). However, given the dispute regarding the intentions of Defendant Schumann and the truthfulness of her statement, the court cannot conclude as a matter of law that Defendant Schumann's statement was made in good faith. Consequently, Defendants are not entitled to summary judgment based on their invocation of a qualified privilege.

Thus, the court denies Defendants' summary judgment motion with respect to Plaintiff's defamation claim.

B.  <u>Tortious Interference with an At-Will Employment Contract</u>

In her complaint, Plaintiff alleged that Defendant Schumann's statement that the files Plaintiff supervised lacked evidence of adequate supervision constituted an intentional interference with her at-will employee contract. (ECF No. 5 at 2–4). Plaintiff claimed that as a result of the alleged interference, she was terminated by her employer. *Id.* at 2. The elements for a claim of tortious interference with a contract are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages resulting therefrom. *DeBerry v. McCain*, 274 S.E.2d 293, 296 (S.C. 1981). A contract that is terminable at-will satisfies the contract requirement. *See Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 274 S.E.2d 293, 296 (S.C. 1981). The

10

parties contest prong three, intentional procurement, and prong four, absence of justification.

        i.        Intentional Procurement

Intentional procurement of the breach of contract "requires that the interference be for an improper purpose or by improper methods." *Eldeco, Inc. v. Charleston County School Dist.*, 642 S.E.2d 726, 732 (S.C. 2007). While harm may result from the interference, "it is not necessary that the interfering party intend such harm. Instead, it is only necessary that they intend to interfere with either an existing contract or intend to interfere with a prospective contract." *Id.*

It appears the South Carolina Supreme Court has embraced the discussion of improper methods from a Virginia Supreme Court opinion. *See Crandall Corp. v. Navistar Intern. Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990) (citing to the "extensive discussion of improper methods" in *Duggin v. Adams*, 360 S.E.2d 832 (Va. 1987)). In that opinion, the Virginia Supreme Court found that improper methods of interference "are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Id.* at 836. The Virginia Supreme Court lists examples of improper methods which include "threats or intimidation", "fraud", "misrepresentation or deceit", "defamation", "duress", and "undue influence".[4] *Id.* In addition to intent to injure, this prong may be satisfied where a plaintiff can demonstrate the defendant "knows that the interference is certain or substantially certain to occur as a result of [the defendant's] action." RESTATEMENT (SECOND) OF TORTS § 766A, Comment e (1979).

In their motion for summary judgment, Defendants argue that no genuine dispute exists regarding the intentional procurement of a breach of contract. (ECF No. 47-1 at 16).

---

[4] The opinion also lists "violence", "bribery", "unfounded litigation", "misuse of inside or confidential information", and "breach of a fiduciary relationship". *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987).

11

Considering substantially the same arguments discussed above concerning Plaintiff's defamation claim, and viewing the facts in a light most favorable to Plaintiff, the court finds there is competent evidence "to suggest [a] purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party." *See Eldeco, Inc.*, 642 S.E.2d at 732. In other words, the record has created a factual dispute as to whether Defendant Schumann was motivated by ill will in speaking with Plaintiff's supervisors, particularly since the record does not conclusively establish that there was a lack of supervision evident in the files.[5] Defendants had a close relationship with Specialty, and Defendant Schumann worked from Specialty's offices. Given this relationship and evidence of a conflict between Defendant Schumann and Plaintiff, the court is constrained from concluding as a matter of law that Defendant Schumann did not have knowledge of the probable consequences of her actions, namely Plaintiff's termination. The court also finds that a reasonable jury could infer from the circumstances that Defendant Schumann intended to interfere with Plaintiff's employment.

        ii.       Absence of Justification

The absence of justification for the interference can be inferred from the circumstances. *See Camp v. Spring Morg. Corp.*, 426 S.E.2d 304, 306 (S.C. 1993). Courts have found that interference is justified where it is motivated by a legitimate business purpose. *See, e.g., Galliard v. Fleet Morg. Corp.*, 880 F. Supp. 1085, 1089 (D.S.C. 1995). Defendants argue that they are entitled to summary judgment because Plaintiff has not presented any evidence of a lack

---

[5] There is little consensus on which party has the burden of proof as to whether interference was improper or not. RESTATEMENT (SECOND) OF TORTS § 767, Comment k (1979). South Carolina courts have not clearly advised which party carries this burden. However, the court takes into account the counsel of the Restatement (Second) of Torts which states that where the issue is whether the actor is justified under the specific facts as opposed to whether the actor's conduct is generally culpable, the defendant should hold the burden. *Id.* In the absence of objective proof of Defendant Schumann's legitimate reason, i.e. a lack of supervision evident in the files, the court is inclined to allow this issue to proceed to trial.

12

of justification for Defendant Schumann's actions. (ECF No. 47-1 at 16). A majority of courts place the burden of proof for proving justification on defendants. RESTATEMENT (SECOND) OF TORTS § 767, Comment k and Reporter's Notes on § 767 (1979). Moreover, the court finds Plaintiff has created a permissible inference of the absence of justification through the circumstantial evidence of the interpersonal conflict between Plaintiff and Defendant Schumann, the positive reviews of Plaintiff's performance from her supervisors, and the allegedly atypical manner in which the audit was conducted.

Therefore, the court denies Defendants' summary judgment motion for this claim.

## CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** Defendants' Motion for Summary Judgment (ECF No. 47).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 27, 2014
Greenville, South Carolina